THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALISON WELSKI, § | |
|     Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:24-cv-863 |
| § | |
| § | |
| THE UNIVERSITY OF TEXAS HEALTH § | |
| SCIENCE CENTER, § | |
|     Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**I.     INTRODUCTION**

1. Plaintiff Alison Welski brings this action for damages, attorneys' fees, and court costs against Defendant The University of Texas Health Science Center due to the actions and omissions of one of its components, The UT Health Houston School of Public Health ("UT Health"), which constitute intentional discrimination under Title II of the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

2. As discussed further below, UT Health refused to provide reasonable accommodations to Plaintiff when she was pursuing her graduate degree program there, despite having full awareness of the necessity of such accommodations. In fact, on March 8, 2022, UT Health dismissed Plaintiff from its doctoral degree program in Public Health, based on issues arising entirely from Plaintiff's disability and based on (1) the unwillingness of UT Health to provide reasonable and necessary accommodations to Plaintiff, and (2) the intentionally discriminatory motivations of those administering the program.

3. Plaintiff has suffered extensive damages as a result of UT Health's misconduct.

4. The lack of a doctorate in Public Health has greatly hindered Plaintiff's ability to pursue her career aspirations effectively. However, UT Health has shown no interest in remedying its past and ongoing misconduct  As a result, Plaintiff has had no alternative but to seek the intervention of this Court.

1

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action and may grant the relief sought herein pursuant to 28 U.S.C. § 1331 by virtue of claims brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

6. Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims alleged herein occurred in this district in or around Houston, Texas, located in Harris County.

## III. PARTIES

7. Plaintiff Alison Welski is a resident of Philadelphia, Pennsylvania. During a substantial portion of the relevant time period, Ms. Welski was a student at UT Health in Houston, Texas.

8. UT Health is a component of Defendant The University of Texas Health Science Center, which is a public institution of Higher Learning and organized within the State of Texas and which is itself a component of The University of Texas System and The University of Texas. Defendant The University of Texas Health Science Center may be served with process by service upon its president, Giuseppe N. Colasurdo, M.D., 7000 Fannin Street, Houston, Texas 77030. At all times relevant to this cause, Defendant The University of Texas Health Science Center was a component of a public university system located in Harris County, Texas, which seeks and receives federal financial assistance from the Federal Government for its educational programs and activities.

## IV. FACTS

9. Plaintiff Alison Welski worked for the Center for Disease Control ("CDC") in

2018.  Due to her credentials and qualifications, she was heavily recruited by UT Health to join its School of Public Health in its Health Promotion and Behavioral Sciences program as a doctoral student.  Dr. Maria Fernandez, one of the most influential figures in the program, actively participated in this recruitment effort.  Plaintiff decided to join UT Health in part because of the opportunities for career advancement a doctoral degree from the UT Health program would provide.

10.     Plaintiff enrolled in the doctoral program at UT Health in the Fall of 2018.  In one of her very earliest classes, a professor informed Plaintiff's class that they would all eventually have psychiatric issues because of the intense stresses of the program.  She was also advised at that same point not to work for Dr. Fernandez because of how difficult she was.  Plaintiff heard this same advice later that week.  However, she was unable to take the advice she was offered.  Despite the fact that she was Plaintiff's academic advisor, Dr. Fernandez also insisted that Plaintiff work for her on a completely separate project having nothing to do with Plaintiff's academic work.  On that separate project, Plaintiff supervised about twenty people.  Dr. Fernandez interacted with Plaintiff exclusively in connection with this independent project, rather than regarding her academic work, in which she showed little interest.  It was clear that Dr. Fernandez had recruited Plaintiff for her project leadership skills rather than to facilitate Plaintiff's advancement of her own educational goals.  Dr. Fernandez's approach, coupled with the stresses endemic to the program itself, proved extremely detrimental to Plaintiff's health.

11.     In fact, partly due to those intense stresses, Plaintiff in the months leading up to the Fall of 2020 developed kidney issues so severe that she was hospitalized on several occasions, ultimately requiring surgery, and was bedridden for long stretches of time, even when not hospitalized.  Specifically, Plaintiff had recurrent renal stones, renal infections, deep vein

thrombosis, and related conditions. She was unable to type sufficiently to complete her work for the UT Health program, so she requested the accommodation of a laptop equipped with speech-to-text software so that she could continue her work effectively. Plaintiff's medical conditions substantially limited her ability to work and to learn without this accommodation and without the other requested accommodation of having (a) sufficient time to complete her work in light of her medical conditions, and (b) the ability to make up work which she was temporarily unable to complete during periods of hospitalization and/or incapacitation. Relatedly, as documented by her treating physicians, the medical conditions substantially limited her ability to sit, to stand, to walk, and to lift, in part due to the intense episodic back pain resulting from her medical conditions.

12. Plaintiff's treating physicians submitted several written requests to the UT Health program documenting Plaintiff's need for appropriate accommodations, including multiple requests from Dr. Nneka Okafor, an accomplished Assistant Professor in the field of Family and Community Medicine at the Baylor College of Medicine. Likewise, Dr. Daniel Caplivski, a Professor of Internal Medicine practicing at the renowned Mount Sinai Health System in New York confirmed Plaintiff's condition in the Fall of 2020 as one of her treating physicians and provided documentation to the UT Health program. Plaintiff continued to request the above-referenced accommodations with the support of this documentation from her treating physicians on various occasions during 2020.

13. However, the leadership team at the UT Health program took on a highly obstructionist approach throughout this time period, despite Plaintiff's demonstrated disability. As an initial matter, the laptop provided ostensibly for the purpose of facilitating speech-to-text did not function and so did not serve as an appropriate accommodation. Furthermore, Plaintiff's

professors simply refused to believe that she had a medical condition that rose to the level of a disability, despite her documented evidence.

14. For example, Dr. Kimberly Lopez repeatedly accused Plaintiff of lying about her medical condition and failed her in a class because, without evidence, she believed Plaintiff was not in the hospital when she said that she was. In fact, Plaintiff was in the hospital at the time, suffering from severe disability-related complications. Dr. Lopez furiously sought to induce Plaintiff to admit to lying, attempting to persuade her that she would be unable to move forward with the program in the absence of such an admission—an admission that would have itself constituted a falsehood, as Plaintiff was in the hospital at the applicable time.

15. Dr. Susan Tortolero Emery, the Dean of Students, despite acknowledging the documentation from Plaintiff's treating physicians, challenged its sufficiency and ultimately refused to grasp the pervasiveness of the impact of Plaintiff's health conditions.

16. Meanwhile, Dr. Maria Fernandez, the highly placed professor who had recruited Plaintiff so vigorously from the CDC, sabotaged her repeatedly during this time period. Dr. Fernandez had illegitimately purloined an idea which Plaintiff put forward early in her time at UT Health, claiming originally that the idea was "terrible," but then surreptitiously having it researched and published without crediting Plaintiff. Having wronged Plaintiff intellectually in this fashion, Dr. Fernandez proceeded to wrong her in other ways as well, possibly in an effort to damage Plaintiff's stature in an effort to shield her own. She treated her abusively in the course of supervising her studies, causing her such a degree of stress that Plaintiff's renal ailments arose in no small part from the impact of this abuse. When Plaintiff made her medical conditions known and sought accommodations for them, Dr. Fernandez treated the matter dismissively—telling Plaintiff, for example, that she was "catastrophizing" and merely making herself sick—

and encouraged her colleagues to do the same.

17. Ultimately, the combined efforts of these professors and administrators, as well as others in the UT Health program, caused a continued deterioration in Plaintiff's health, leading to a heart attack. Her combined health issues sidelined her entirely for a significant period of time thereafter. Far from showing any willingness to accommodate Plaintiff's deteriorating health and her associated disabilities, the UT Health program demanded the impossible—that she complete courses that were previously left incomplete because of UT Health's own failure to grant appropriate accommodations. The disastrous effects of UT Health's pervasive unwillingness to accommodate Plaintiff lasted throughout her entire time at UT Health. After the first semester, UT Health withheld financial aid from Plaintiff because of the effects of its own failure to accommodate, not even giving her notice of this fact until right before classes began the following semester. Then, finally, on March 8, 2022, Dr. Emery sent correspondence dismissing Plaintiff from the UT Health program, along with a thinly veiled threat of criminal charges if Plaintiff did not immediately return the equipment that UT Health had provided her for purposes of "accommodation."

18. To add insult to injury, on information and belief, professors and administrators at the UT Health program later sought to reach out to others in the health profession to try to discredit Plaintiff and to damage her reputation in the field, presumably again to shield their own credibility by trying to undermine that of Plaintiff. Their actions in this regard were by no means unprecedented. On the contrary, Dr. Paula Cuccaro had previously reached out without Plaintiff's knowledge or consent to members of the Mount Sinai Medical Center with whom Plaintiff had worked on her practicum, including the Dean of Students there, in an effort to sabotage Plaintiff's efforts. Furthermore, UT Health professors and administrators failed to

protect Plaintiff's private health information, thus exposing her to unwelcome attention from others which further compromised her situation.

19. UT Health at all times had the capacity to grant Plaintiff the reasonable and necessary accommodations she requested. UT Health has shown great flexibility in accommodating others for whom its professors and staff members have demonstrated preferences. As but one example, although there is an ostensible requirement that an applicant for admission to the UT Health program in which Plaintiff was enrolled have five years of work experience in the public health field, Plaintiff is not aware of any doctoral student in the program who had met that requirement other than herself. UT Health showed similar flexibility in accommodating many other students to facilitate their graduation from the program—students without disabilities. For Plaintiff herself—a student with a disability for whom reasonable and necessary accommodations are mandated by federal law—UT Health refused to show any flexibility at all, much less grant the reasonable and necessary accommodations which she requested and which were fully appropriate.

20. The refusal of the UT Health program to grant Plaintiff's reasonable and necessary requests for accommodation, leading to her dismissal, as well as the actions and omissions associated with that refusal have damaged Plaintiff severely, including her physical and mental well-being and her career prospects, including, but not limited to, the deprivation of her equal opportunity to pursue the doctoral degree, which she would have achieved if provided the accommodations she requested.

## CAUSES OF ACTION

## COUNT I

### (SECTION 504)

21. Plaintiff incorporates by reference paragraphs 1-20 of this Complaint.

22. Plaintiff is a "disabled/handicapped" individual as defined in 29 U.S.C. § 705.

23. Plaintiff has been denied and excluded from significant benefits of Defendant's program, including, but not limited to, the equal opportunity to graduate from the program with a doctoral degree.

24. Defendant receives federal financial assistance in implementing its programs.

25. Defendant's level of deliberate indifference, bad faith, and gross misjudgment in failing to provide Plaintiff such equal opportunities was intentional and sufficiently egregious to constitute discrimination under Section 504.

26. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered substantial injuries.

## COUNT II

### (TITLE II OF THE ADA)

27. Plaintiff incorporates by reference paragraphs 1-26 as set forth above.

28. Defendant is a public entity within the meaning of that term under Title II of the ADA.

29. Plaintiff is a qualified individual with a disability under the ADA.

30. The actions and omissions of UT Health and its agents acts constitute unlawful discrimination under 42 U.S.C. § 12132.

31. The actions and omissions of UT Health and its agents were intentional and constituted intentional discrimination.

32. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered substantial injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an order after appropriate proceedings up to and including a trial by providing the following remedies:

i. Ordering Defendant to pay Plaintiff compensatory damages, including damages for emotional distress and lost income;

ii. Ordering Defendant to reimburse Plaintiff for her costs incurred in this litigation, including, but not limited to, reasonable attorneys' fees and expert witness fees and such further, additional or alternative relief as may appear equitable and just to this Court; and

iii. Awarding Plaintiff such further and additional relief as the Court may deem just and equitable.

DATED: March 7, 2024　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　__/s/ Mark Whitburn_____
　　　　　　　　　　　　　　　　　　　　　　Mark Whitburn
　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24042144
　　　　　　　　　　　　　　　　　　　　　　Sean Pevsner
　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24079130
　　　　　　　　　　　　　　　　　　　　　　Whitburn & Pevsner, PLLC
　　　　　　　　　　　　　　　　　　　　　　2000 E. Lamar Blvd., Suite 600
　　　　　　　　　　　　　　　　　　　　　　Arlington, Texas 76006
　　　　　　　　　　　　　　　　　　　　　　Tel: (817) 653-4547
　　　　　　　　　　　　　　　　　　　　　　Fax: (817) 653-4477
　　　　　　　　　　　　　　　　　　　　　　mwhitburn@whitburnpevsner.com