United States District Court
Southern District of Texas
**ENTERED**
January 28, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Alison Welski, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 4:24-cv-00863 |
| v. | § § | |
| The University of Texas Health Science Center,[1] | § § § | |
| *Defendant.* | § § § | |

## MEMORANDUM AND RECOMMENDATION

In this disability discrimination suit, Defendant The University of Texas Health Science Center at Houston ("the Center") filed a motion under Fed. R. Civ. P. 12 to dismiss all of Plaintiff Alison Welski's claims. Dkt. 9. The case was referred to the undersigned judge. Dkt. 16. After carefully considering the motion, Welski's response, Dkt. 12, the Center's reply, Dkt. 15, the pleadings, and the applicable law, it is recommended that the Center's motion to dismiss (Dkt. 9) be granted.

---

[1] In its motion to dismiss, the Center noted that Welski sued the Center under this incorrect name. *See* Dkt. 9 at 1. The correct name is used above and elsewhere herein. *See id.*

## Background

The following facts are taken from the complaint. They are accepted as true at this stage.

Welski was a graduate student at the UT Health Houston School of Public Health ("UT Health"). *See* Dkt. 1 at 1. She began her doctoral studies in Health Promotion and Behavioral Sciences in the Fall of 2018. *See id*. at 3.

In the months leading up to the Fall of 2020, Welski developed severe kidney issues, partly due to the stresses of the program. *Id*. These issues required several hospitalizations and surgery. *Id*. When not hospitalized, Welski was bedridden for stretches of time. *Id*. Her conditions included renal stones, renal infections, and deep vein thrombosis. *Id*. at 3-4. These medical issues substantially limited her ability to sit, stand, walk, and lift, in part due to episodic back pain. *Id*. at 4.

Because of her medical conditions, Welski requested accommodations during the Fall of 2020. *Id*. These accommodations included (1) a laptop with speech-to-text software, (2) sufficient time to complete her work because of her medical conditions, and (3) an opportunity to make up work she was unable to complete during periods of hospitalization or incapacitation. *Id*. Welski provided the Center with documentation from her treating physicians that explained her conditions and her need for appropriate accommodations. *Id*.

The Center provided Welski a laptop with speech-to-text software, as she requested. *Id*. But Welski asserts that the software did not function properly. *Id*. She maintains that professors refused to believe she had a medical condition that constituted a disability. *Id*. at 4-5. One professor, Dr. Kimberly Lopez, accused Welski of lying about her medical condition and failed her in a class because she did not believe that Welski had been hospitalized when she said she was. *Id*. at 5. Welski contends that Dr. Lopez also tried to persuade Welski to admit that she was lying about the incident, telling Welski that she "would be unable to move forward with the program" absent such an admission. *See id*.

Dr. Susan Tortolero Emery, the Dean of Students, acknowledged the documentation from Welski's physicians but "challenged its sufficiency." *Id*. Welski's advisor, Dr. Maria Fernandez, allegedly treated the matter dismissively, telling Welski that she was "catastrophizing" and "making herself sick" and "encouraged her colleagues to do the same." *Id*. at 5-6.

Welski's health continued to deteriorate, leading to a heart attack that she attributes to the actions of UT Health's professors and administrators. *Id*. at 6. Due to her worsening condition and the Center's alleged failure to provide appropriate accommodations, Welski could not complete certain

courses.[2]  *See id.*  On March 8, 2022, Dr. Emery notified Welski that she was being dismissed from the program.  *Id.*

On March 7, 2024, Welski filed this suit against the Center, asserting claims under Title II of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  *See id.* at 7-8.  Subsequently, the Center filed its motion to dismiss, Dkt. 9, Welski responded, Dkt. 12, and the Center replied, Dkt. 15.  The motion is ripe for resolution.

## Legal standards

### A.    Rule 12(b)(1)

"Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the

---

[2] According to the Center, Welski failed to enroll for three consecutive semesters. Dkt. 9 at 5.  Because the complaint does not include that allegation, the Court disregards it.

disputed facts." *Id.* at 287. The plaintiff bears the burden to establish that subject-matter jurisdiction exists. *Id.* at 286.

### B.    Rule 12(b)(6)

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quotation omitted).

## Analysis

### I.   Welski has not pleaded sufficient facts to overcome the Center's sovereign immunity, which bars her Title II ADA claim.

The Center argues that, as part of the University of Texas System, it is entitled to sovereign immunity that divests this Court of jurisdiction over Welski's claim under Title II of the ADA.  *See* Dkt. 9 at 3.  Invoking *United States v. Georgia*, 546 U.S. 151, 159 (2006), the Center argues that Welski cannot satisfy the second and third steps of the three-part inquiry, as necessary to show that Title II's abrogation of sovereign immunity can be enforced. *See id*. at 3-6.

Welski does not dispute the governing framework.  Instead, she asserts that her Title II claim survives dismissal under *Pickett v. Texas Tech University Health Sciences Center*, 37 F.4th 1013, 1025-26 (5th Cir. 2022).  *See* Dkt. 12 at 11-12.  According to Welski, *Pickett* merely requires her to plead how the Center "departed substantially from accepted academic norms in failing to grant the reasonable accommodations she requested."  *Id*. at 12.

### A.   Sovereign immunity framework

"Under the Eleventh Amendment, federal courts lack jurisdiction over suits against nonconsenting states."  *Block v. Tex. Bd. of L. Exam'rs*, 952 F.3d 613, 617 (5th Cir. 2020).   That sovereign immunity extends to state instrumentalities, including health institutions that are part of a state's public

university system. *See Rudison v. MD Anderson Cancer Ctr.*, 91 F.4th 788, 789 (5th Cir. 2024) ("[W]e have consistently treated health institutions of the UT System ... as instrumentalities of the State of Texas.") (quoting *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 257 (5th Cir. 2020)). As part of the University of Texas System, the Center is entitled to sovereign immunity. *See Watson v. Univ. of Tex. Health Sci. Ctr.*, 2009 WL 1476469, at *1 (S.D. Tex. May 27, 2009); *see also, e.g.*, *Sullivan v. Univ. of Tex. Health Sci. Ctr. at Hous. Dental Branch*, 217 F. App'x 391, 392 (5th Cir. 2007) (per curiam) (UTHSC, as an arm of the state, enjoys sovereign immunity).

Congress can abrogate a state's sovereign immunity if it (1) clearly states its intention in the statute and (2) acts under Section Five of the Fourteenth Amendment. *See Block,* 952 F.3d at 617 (citing *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003)). Here, the first requirement is straightforward: Congress expressly declared that states "shall not be immune" from suit for violating the ADA. 42 U.S.C. § 12202. This statement amounts to "an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *Georgia*, 546 U.S. at 154.

Whether Title II's abrogation of sovereign immunity comports with Section Five of the Fourteenth Amendment is more complex. For this inquiry, the Supreme Court has established a three-part test that must be evaluated on a claim-by-claim basis:

(1)   which aspects of the State's alleged conduct violated Title II;

(2)   to what extent such misconduct also violated the Fourteenth Amendment; and

(3)   insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159; *see also Block*, 952 F.3d at 617 (applying *Georgia*'s three-part test). Under Fifth Circuit precedent, courts must "address those questions in that order." *Pickett*, 37 F.4th at 1026 n.2 (citing *Block*, 952 F.3d at 617-18, 618 n.12). As the party invoking the Court's jurisdiction, Welski bears the burden to show that each requirement is met. *See id.* at 1026.

   1.   Welski has pleaded plausible Title II violations.

The first step determines if Welski has stated a Title II violation. This involves a Fed. R. Civ. P. 12(b)(6) analysis. *See Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011). Accordingly, the Court takes Welski's well-pleaded allegations as true and views them in the light most favorable to her.

To assert a valid Title II claim, Welski must allege: "(1) that [she] is a qualified individual with a disability; (2) that [she] was excluded from participation in, or denied the benefits of, services, programs, or activities for which the public entity is responsible, or was otherwise being discriminated against; and (3) that such discrimination is because of [her] disability." *Luke v. Texas*, 46 F.4th 301, 305 (5th Cir. 2022). This Court has also adapted the

foregoing elements for cases where a student was "excluded from an educational program." *Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F. Supp. 2d 874, 879 (S.D. Tex. 2012), *aff'd*, 524 F. App'x 93 (5th Cir. 2013) (per curiam). In that context, a plaintiff must show that: "(1) [s]he has a [qualifying] disability; (2) [s]he is otherwise qualified to participate in the defendant's program; and (3) [s]he was excluded from the program on the basis of [her] disability." *Id.* (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012)).

The Center does not dispute that Welski has adequately alleged a Title II violation.[3] *See* Dkt. 9 at 4. But in the interests of completeness, the undersigned addresses the allegations briefly and concludes that the Title II claim is plausibly alleged.

For the first requirement, Welski has sufficiently alleged a qualifying disability. A "disability" is (1) a physical or mental impairment that substantially limits one or more of the major life activities, (2) a record of such impairment, or (3) being regarded as having such impairment. 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking,

---

[3] The Center also contends that Welksi's Title II ADA claim is time-barred, *see* Dkt. 9 at 7, but it does not assert that the untimeliness of that claim has any bearing on the Center's sovereign immunity. Because the statute of limitations is an affirmative defense, it is more appropriately viewed as a merits issue.

standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). In addition, "[t]he definition of disability ... shall be construed in favor of broad coverage ...." 42 U.S.C. § 12102(4)(A).

Here, the complaint details Welski's severe kidney issues and related medical conditions, including renal stones, renal infections, and deep vein thrombosis. Dkt. 1 at 3-4; *see* 42 U.S.C. § 12102(1). She alleges that these impairments rendered her bedridden at times and substantially limited her "ability to sit, to stand, to walk, and to lift," due to intense and episodic back pain. *See* Dkt. 1 at 4. Welski's allegations sufficiently show that she had a disability because the foregoing medical conditions impaired her ability to engage in several major life activities.

Welski's allegations also meet the second requirement, as they show she was qualified to participate in the Center's program. "To be 'otherwise qualified' for a postsecondary education program, an individual with a disability must satisfy the program's 'essential' requirements, with or without the aid of reasonable accommodations." *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 220 (5th Cir. 2018) (per curiam) (citing *McGregor v. La. State Univ.*, 3 F.3d 850, 855 (5th Cir. 1993)). "A requirement is 'essential' if 'the nature of the program would be fundamentally altered' without it.'" *Id.* (citations omitted).

According to the Complaint, Welski's credentials and qualifications, including her prior work for the Centers for Disease Control and Prevention, led UT Health to recruit her for their doctoral program in Health Promotion and Behavioral Sciences. *See* Dkt. 1 at 2-3. Welski also alleges that she satisfied the program's requirement of having five years of prior work experience in the public health field. *Id.* at 7. She maintains that it was the Center's denial of appropriate and reasonable accommodations, including use of functioning speech-to-text software and additional time to complete her work, that thwarted her pursuit of the doctoral degree. *Id.* at 2-3, 7. These allegations plausibly indicate that Welski was "capable of satisfying the academic and technical requirements set by the [UT Health] with the aid of reasonable accommodations." *See McGregor*, 3 F.3d at 855 (applying this test to law student's disability discrimination claim).

Lastly, Welski has plausibly alleged that the Center dismissed her from the doctoral program because of her disability. Welski alleges that the Center took a "highly obstructionist approach" when she requested accommodations for her disability. *Id.* at 4. She maintains that she received a non-functioning laptop with speech-to-text software that did not "serve as an appropriate accommodation." *Id.* She also asserts that her professors "refused to believe that she had a medical condition that rose to the level of a disability, despite her documented evidence." *Id.* at 5. And instead of being allowed to make up

work missed due to her hospitalization—an accommodation she requested—one of her professors failed her in the class, refusing to believe that Welski had been hospitalized. *Id.* Welski further alleges that when she sought accommodations for her medical conditions, her advisor "treated the matter dismissively" and "encouraged her colleagues to do the same." *Id.* at 5-6.

Welski maintains that the combined effects of these actions and failures to grant accommodations rendered her unable to complete her courses, which led the Center to dismiss her from the program. *Id.* at 6. This is enough to plausibly allege a causal link between her disability and her dismissal. *See e.g.*, *Shaikh*, 739 F. App'x at 216, 223-24 (holding that causation for Rehabilitation Act and ADA claims was adequately alleged where a medical school constructively dismissed a student whose disability rendered him unable to retake a test during the specified timeframe). Welski has adequately pleaded a Title II claim.

### 2. Welski does not show how the Center's conduct violated the Fourteenth Amendment.

For the next step, the Court determines whether the Center's alleged misconduct violated the Fourteenth Amendment. *Georgia*, 546 U.S. at 159. Welski, despite her burden, offers no argument on this point.

Instead, Welski argues that the Fifth Circuit's decision in *Pickett* only requires that she plead sufficient facts to show that the Center substantially

departed from accepted academic norms by refusing her requests for accommodation. *See* Dkt. 12 at 11-12. As the Center responds, that is not consistent with the Fifth Circuit's analysis in *Pickett*. Dkt. 15 at 2-3.

In *Pickett*, the Fifth Circuit addressed the first step of the *Georgia* test, concluding that the plaintiff had "plausibly alleged defective accommodations and invidious discrimination forbidden by Title II of the ADA." 37 F.4th at 1037. There, the defendant allegedly failed to provide requested accommodations to a graduate nursing student with ADHD, treated the student more poorly, and graded her more harshly after learning of her disability, leading to her dismissal from the programs. *See id.* at 1033-34.

Procedural irregularities, however, precluded the Fifth Circuit from fully analyzing whether the plaintiff had adequately stated a Fourteenth Amendment violation, under *Georgia*'s second step. *See id.* at 1036-37. The plaintiff maintained that the defendant's conduct violated her right to substantive and procedural due process by "irrationally depriv[ing] her of a constitutionally protected property interest ...." *Id.* at 1035 (quotation omitted). This raised the question of whether "the Due Process Clause protected her desire to continue her education at the Center." *Id.* at 1036. But the Fifth Circuit declined to reach this threshold issue, concluding "it is not before us because the defendants have not preserved it for this appeal." *Id.*; *see also Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 2024 WL 1590161, at *2

(N.D. Tex. Jan. 2, 2024) (making this observation on remand), *adopted by* 2024 WL 1048140 (N.D. Tex. Mar. 11, 2024), *aff'd*, 2024 WL 4973300 (5th Cir. Dec. 4, 2024).

Instead, Welski cites the Fifth Circuit's further observation that "it is inappropriate to assume that Pickett had no interest protected by the Due Process Clause because she plausibly pleaded Title II violations representing a 'substantial departure from accepted academic norms.'" Dkt. 12 at 11 (quoting *Pickett*, 37 F.4th at 1037, which quoted *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)). From there, Welski assumes that, to overcome sovereign immunity, she need only allege that the Center "departed substantially from accepted academic norms in failing to grant the reasonable accommodations she requested." *See id.* at 12.

Welski's position fails to account for the defendant's waiver in *Pickett*, which circumscribed the Fifth Circuit's analysis. To state a due process violation, a plaintiff must first identify a protected interest in "life, liberty, or property." *See Shelton v. City of College Station*, 780 F.2d 475, 479 (5th Cir. 1986) (en banc) ("Deprivation by the state of a protected interest in life, liberty, or property is prerequisite to a claim for denial of due process."). Because the defendant in *Pickett* failed to properly challenge the existence of a protected interest, the Fifth Circuit at most concluded that the plaintiff adequately pleaded an arbitrary deprivation of a protected property interest, *assuming*

*that one exists.* *See* 37 F.4th at 1037. This is underscored by the Fifth Circuit's explicit statement authorizing the district court to "consider in the first instance," on remand, "whether Pickett's claims implicate the Fourteenth Amendment at all, provided that the defendants still wish to raise that contention." *Id.*

These material distinctions foreclose Welski's reliance on *Pickett*. Unlike the plaintiff in *Pickett*, Welski has not pleaded any constitutional right that allegedly was violated, much less under the Due Process Clause. And unlike the defendant in *Pickett*, the Center has explicitly argued that Welski has no constitutional right to continued higher education. *See* Dkt. 9 at 5. Other than her mistaken reliance on *Pickett*, however, Welski offers no argument or authority indicating that the Center's conduct violated the Fourteenth Amendment, as required under *Georgia*'s second step.

Moreover, no binding authority has recognized a constitutionally protected property right to continued higher education. The Supreme Court has not resolved the issue, and the Fifth Circuit has not issued a published decision on it either. *See Ewing*, 474 U.S. at 222-25; *Pickett*, 37 F.4th at 1035. But the Fifth Circuit has provided notable guidance. On remand after *Pickett*, the district court held that the plaintiff did not have a protected property interest in continued higher education, which negated her substantive due process claim under 42 U.S.C. § 1983. *See Pickett*, 2024 WL 1590161, at *17-

18.   The Fifth Circuit affirmed that conclusion, albeit in an unpublished decision.  *See Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 2024 WL 4973300, at *2 (5th Cir. Dec. 4, 2024) (per curiam) (holding that "continued enrollment" in a higher education program "is not a protected interest," citing *Barnes v. Symeonides*, 1995 WL 10518, at *2 (5th Cir. Jan. 3, 1995), which concluded that "post-graduate or professional education ... is not a right afforded either explicit or implicit protection under the Constitution").

Ultimately, however, Welski's failure to brief the issue renders it unnecessary to delve more deeply into the issue.  It is enough to conclude that Welski has not met her burden to allege and show, under *Georgia*'s second step, that the conduct underlying her Title II claim violates the Fourteenth Amendment.

3.   <u>Welski has not shown that Title II's abrogation of sovereign immunity is valid.</u>

Given Welski's failure to show a direct Fourteenth Amendment violation, this Court ordinarily would proceed to step three of *Georgia*'s test: determining if Title II's abrogation of sovereign immunity is valid.  This limitation flows from Section 5 of the Fourteenth Amendment, which "grants Congress the power to enforce the substantive guarantees contained in § 1 by enacting 'appropriate legislation.'"  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365 (2001) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997)).

The Supreme Court has recognized, however, that "Congress' power 'to enforce' the [Fourteenth] Amendment includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct" than what the Amendment's text forbids. *See id.* (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000)). "Accordingly, § 5 legislation reaching beyond the scope of § 1's actual guarantees must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Id.* (quoting *City of Boerne*, 521 U.S. at 520). This inquiry, in turn, requires a court to determine what limitations Section 1 of the Fourteenth Amendment places on the state with respect to the challenged conduct, and then "whether Congress identified a history and pattern" of such conduct by the states that the statute seeks to remedy. *See id.* at 365, 368 (addressing disability discrimination in employment under Title I of the ADA); *see also, e.g.*, *Tennessee v. Lane*, 541 U.S. 509, 526-32 (2004) (conducting this inquiry with respect to Title II's application to the right of access to the courts).

As the foregoing framework reflects, this is not a simple determination. Yet nowhere has Welski attempted to address it. She merely recites the legal standard, even though the Center challenged her ability to satisfy that standard. *Compare* Dkt. 9 at 5-6 (arguing that "Title II's requirement that states provide disabled individuals access to state programs" would exceed the

17

bounds of rational-basis review, which the Fifth Circuit applies to disability discrimination) (quoting *Baker v. Univ. of Tex. Health Sci. Ctr. Hous.*, 2011 WL 1549263, at *3 (S.D. Tex. Apr. 21, 2011)), *with* Dkt. 12 at 11 (quoting *Douthit v. Collier*, 2022 WL 5240152, at *3 (5th Cir. Oct. 5, 2022) (per curiam), which quoted *Pickett*, 37 F.4th at 1026)).

Moreover, the Fifth Circuit has yet to determine whether its prior decision in *Reickenbacker v. Foster*, 274 F.3d 974, 975 (5th Cir. 2001), holding that Title II did not validly abrogate states' sovereign immunity, remains good law with respect to disability discrimination that does not involve access to the courts. *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 277 n.14, 287 (5th Cir. 2005) (en banc) (observing that *Reickenbacker*'s application to access to courts was overruled in *Lane*, but its "continuing validity" other than that context is "uncertain"; finding it "unnecessary" to resolve the issue). This Court is "not free to overturn the rule" pronounced in *Reickenbacker*, as only the Fifth Circuit can determine whether subsequent authority warrants revisiting the issue. *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021) (noting that the district court was bound by a prior Fifth Circuit decision; concluding that subsequent Supreme Court decisions changed the law, "warrant[ing] a change in course").

Regardless, Welski's failure to brief the issue forecloses any need to examine it. *See, e.g.*, *Shaikh*, 739 F. App'x at 225 (finding that plaintiff waived

the issue because he "failed to brief any meaningful argument that Congress's purported abrogation is 'nevertheless valid'"). She has not met her burden to show that the Center's sovereign immunity was validly abrogated. Accordingly, her Title II claim should be dismissed for lack of jurisdiction.

## II.   <u>Welski's Rehabilitation Act claim is untimely.</u>

The Center's sovereign immunity does not affect Welski's Rehabilitation Act claim. This is because the Center's receipt of federal funds waives its sovereign immunity for discrimination claims under the Act. *See Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 345 (5th Cir. 2005) (en banc); 29 U.S.C. § 794(a) (prohibiting disability discrimination by "any program or activity receiving Federal financial assistance"). Instead, the Center argues that the statute of limitations bars Welski's Rehabilitation Act claims. *See* Dkt. 9 at 7.[4]

Because the Rehabilitation Act does not prescribe a limitations period, the operative period is borrowed from state law. *See Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011). Texas's two-year limitations period for personal-injury suits therefore applies. *See id.* The accrual period, however, is governed by federal law. *See id.* at 238. As with other federal claims, a

---

[4] The Center's reply brief withdrew its further contention (in Dkt. 9 at 10-13), premised on state law, that Welski's failure to timely effectuate service of process bars her claim. *See* Dkt. 15 at 5-6 (conceding that *West v. Conrail*, 481 U.S. 35 (1987), forecloses applying a state's service-of-process requirements to a federal claim).

Rehabilitation Act claim accrues when the plaintiff "becomes aware that [she] has suffered an injury or has sufficient information to know that [she] has been injured." *See id.*

According to the Center, Welski's claim is untimely because her allegations target acts and events that occurred nearly four years ago. *See* Dkt. 9 at 9.  The Center cites Welski's allegations that she was denied accommodations for her disability in the Fall of 2020.  *See id.* at 10.  Under the Center's view, the limitations period expired in 2022, two years before she filed this suit.  *Id.*

In response, Welski contends that her claims accrued much later, when the Center dismissed her from the program on March 8, 2022.  *See* Dkt. 12 at 13.  Welski reasons that the "statute of limitations can only run from the date of the injury for which Plaintiff seeks a remedy," and that the "damages claims are based on her dismissal."  *Id.*  Welski downplays the numerous allegations regarding the Center's denials of accommodation, characterizing those assertions as mere "background" and "not necessarily in themselves the basis of claims for which she seeks a remedy."  *Id.*

The Center's reply disputes Welski's characterization.  *See* Dkt. 15 at 3.  As the Center notes, "Welski spends the vast majority of her Original Complaint alleging that [the Center] failed to accommodate Welski's alleged disability when it specifically refused her requests for accommodation—*not* in

alleging that her eventual dismissal was a violation of the ADA." *Id.* at 4. According to the Center, Welski's focus on the lack of accommodations means her claims accrued in 2020. *See id.* at 5.

The Center's position is correct. Welski's allegations show that her Rehabilitation Act claim hinges on the Center's alleged denial of accommodations, which led to her dismissal from the UT Health graduate program. Under Welski's narrative, the program demanded that "she complete courses that were previously left incomplete because of UT Health's own failure to grant appropriate accommodations," with professors refusing to believe the seriousness of her conditions. *See* Dkt. 1 at 6, 4-6. The complaint makes clear that it is those denials of "reasonable and necessary requests for accommodation"—all occurring more than two years before she filed this suit, *see id.* at 7—that "l[ed] to her dismissal," *see id.* This is also apparent from her assertion that the Center wrongfully deprived her "of her equal opportunity to pursue the doctoral degree, which she would have achieved if provided the accommodations she requested." *See id.*

Welski does not dispute that any claims premised on the denial of accommodations are untimely. Courts have concluded that each such denial constitutes a discrete act that triggers the limitations period. *See Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005) (plaintiff's complaints about specific denials of accommodation requests were "discrete

acts" that "do not qualify under the continuing violation exception to the ADA's actionable period restrictions"); *Profit v. Klein Indep. Sch. Dist.*, 2015 WL 3866720, at *10 (S.D. Tex. June 23, 2015) (relying on *Henson* and analogous conclusions in *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003); *Aubrey v. City of Bethlehem, Fire Dep't*, 466 F. App'x 88, 93 (3d Cir. 2012), and *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1210 (10th Cir. 2007)); *see also, e.g.*, *Valenzuela v. Univ. of Tex. at Austin*, 2022 WL 958386, at *4 (W.D. Tex. Mar. 30, 2022) (applying this principle and concluding that Title II failure-to-accommodate claims were time-barred). Based on her allegations, Welski's complaints about various failures to accommodate accrued during the Fall of 2020 or shortly thereafter, all outside the two-year limitations period.

Welski cannot revive those time-barred allegations by focusing on her subsequent dismissal from the program in March 2022. A plaintiff cannot resurrect untimely discrimination allegations to establish that a subsequent discrete act, even if related, was discriminatory. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002) (disallowing claims premised on discrete discriminatory acts that occurred outside the limitations period); *see also Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 979 (5th Cir. 1983) ("The plaintiff ... may not employ the continuing violation theory to resurrect claims about discrimination concluded in the past, even though its effects

persist.") (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980)) (quotation omitted); *Henson*, 128 F. App'x at 391 (applying *Morgan* to ADA case).

Here, the allegations belie Welski's characterization of the failures to accommodate as mere "background" facts. *See* Dkt. 12 at 13. Rather, the complaint alleges that her dismissal—which occurred just within the two-year limitations period—was discriminatory *only because* the prior denial of accommodations rendered Welski unable to complete her course work. *See* Dkt. 1 at 1, 6 (dismissal on March 8, 2022); *id.* (complaint filed March 7, 2024). Excising those time-barred failures to accommodate leaves Welski with no actionable Rehabilitation Act claim. Accordingly, that claim should be dismissed as untimely.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendant The University of Texas Health Science Center at Houston's motion to dismiss (Dkt. 9) be **GRANTED.**

It is further **RECOMENDED** that Plaintiff Alison Welski's claim under Title II of the Americans with Disabilities Act be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

It is further **RECOMMENDED** that Welski's Rehabilitation Act claim be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on January 28, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge